THE STATE v. GUILD, Appellant.

Division Two, May 9, 1899.

1. **Accomplice:** AGREEMENT TO DISMISS: NON-ENFORCIBLE. An agreement of a State prosecuting officer to discharge a prosecution against an accomplice on his testifying against his principal can not be enforced, and is no bar to a prosecution.

2. **Receiving Stolen Goods:** CHARGING THIEF'S NAME. An indictment under Revised Statutes 1889, section 3553, for receiving stolen goods, need not allege the thief's name.

3. ———: KNOWLEDGE THAT GOODS WERE STOLEN. Defendant accompanied a sheriff to the stairway of his picture gallery, in search of stolen goods, when he slipped out of the building and attempted to escape. He stated to his captor: "I want to go on. That thing is going to ruin me." *Held* to be sufficient to show that he knew that recently stolen goods found hidden in his gallery were stolen.

4. ——: ——: POSSESSION: PRESUMPTION. Recent possession of stolen goods is sufficient to raise a presumption of guilt in receiving them with knowledge that they were stolen, where the possessor is not the thief, and fails to satisfactorily explain how he acquired possession. (State v. Bulla, 89 Mo. 595, overruled.)

5. ——: JUSTIFIABLE INFERENCE. In a prosecution for receiving stolen goods, it appeared that a bag with some seventy pounds of coffee was stolen; also, flour and dry goods. An empty coffee bag, with prosecuting witness's name on it, some flour, and the dry goods were found in defendant's possession. *Held* that, in the question of value, it could be inferred that the flour was the stolen flour and that the bag had coffee in it when received.

*Appeal from Dent Circuit Court.*—HON. L. B. WOODSIDE, Judge.

AFFIRMED.

C. D. JAMISON, H. B. PERRY and GORDON WHEELING for appellant.

(1) Appellant contends that his plea in abatement of the indictment was a good plea. He insists that he should not be required to plead to the merits; that through her attorney the State had entered into an agreement to discharge him on a consideration in the agreement expressed. His part of this agreement, giving testimony in the cause, the appellant performed. He went before the grand jury and on his testimony the defendants, Wesley Sprague and Jack Sprague, were indicted. With the same agreement between them, the appellant went before the trial court and gave evidence. And then, on the witness stand, in the presence of the court, the appellant reiterated his statement of the agreement, and the attorney for the State gave a silent assent. Again he went before the grand jury at the request of the State, through her attorney, with a similar promise of discharge, and again before the trial court. Each time declaring in court during the trial, his promise of immunity and receiving from the State a tacit agreement, to which the court was a witness. These facts entitled appellant to his

discharge. R. S. 1889, sec. 4217; State v. Chyo Chiagk, 92 Mo. 395; 1 Bish. Crim. Prac., secs. 1020 and 1166; 1 Phil. Ev. (4 Ed.), p. 64; 1 Greenl. Ev., sec. 379. (2) The court erred in admitting against the appellant the evidence of the value of the two sacks of flour: Value was important; the State was laboring hard to make up a total of $30. No proof was offered to show that the flour, the price of which was added to the footing of values, was the property of the company. (3) Evidence touching the coffee should not have been admitted. One hundred pounds of coffee were gone some time in April. This coffee was never found in the possession of the appellant. Witness Chambers found some coffee, one morning, which was never identified, and the evidence of this coffee was offered to the jury as coming from the possession of the appellant. (4) The State prosecuted this case on the theory that recent possession of stolen property was evidence of guilt. Recent possession was all the evidence against the appellant. One can not be a principal in larceny and then receive of the fruits. State v. Smith, 37 Mo. 58; State v. Honig, 9 Mo. App. 298; Holmes v. State, 20 Tex. App. 509; State v. Honig, 78 Mo. 249; Regina v. Perkins, 5 Cox C. C. 554; Conner v. State, 25 Ga. 515; Regina v. Gruncel, 9 Car. & P. 365; Rex v. Dyer, 2 East. P. & C. 767. Mere possession of stolen property is evidence not of receiving but of stealing. Reg. v. Densley, 6 C. & P. 399; State v. Bulla, 89 Mo. 595. No evidence whatever was offered of the primary act, the larceny of the goods by another. (5) Had the indictment alleged that the larceny was committed by Wesley and Jack Sprague, who had been convicted, such conviction would have been evidence to show the primary crime. Com. v. Elisha, 3 Gray, 460. But there was no evidence that another stole the property. Goldstein v. People, 82 N. Y. 231. There was no proof of the knowledge of the larceny. Reg. v. Drage, 14 Cox C. C. 83. (6) It is wrong to tell the jury that if a part

of the property (not thirty dollars in value) was stolen and the defendant was found in possession of $30 worth of stolen property they should convict. This was a comment on the evidence. White v. State, 17 Tex. App. 188; Bryant v. State, 16 Tex. App. 144; State v. Babb, 76 Mo. 501.

EDWARD C. CROW, Attorney-General, and K. B. STONE, for the State.

(1) The prosecuting attorney has a right to enter a *nolle* before a jury is impaneled. 145 Mo. 224. But no power to discharge from liability for crime can have the effect of barring future prosecutions. State v. Lopez, 19 Mo. 254. (2) The testimony concerning the flour was properly admitted. It was for the jury to determine whether it was the flour stolen or not. 144 Mo. 26. (3) Possession of stolen property may be evidence of receiving as well as of theft. Will's Cir. Ev. 94. "The recent possession of stolen property unless satisfactorily explained, is *prima facie* evidence of guilt," i. e., of theft. 75 Mo. 297; 75 Mo. 317. That recent possession of stolen property is no ground for a presumption of guilty knowledge where the indictment is for receiving. 89 Mo. 595. (4) As to identity of goods, the first, fourth and the sixth instructions sufficiently cover that point. State v. Hill, 10 S. W. 28; 96 Mo. 357; 106 Mo. 195. (5) Instruction numbered 1 will not bear the construction put upon it by appellant. As to the other objections in regard to the admission of evidence it may be said that it is the policy of this court to allow some latitude to trial judges in the admission of any evidence tending to throw light upon the transaction. 50 Mo. 126; 53 Mo. App. 405. (6) As to the objections to evidence and the claim that the verdict is not sustained by it—it may be said that it is the modern tendency not to exclude any evidence tending to throw light on the subject, and trial courts

present and familiar with all the circumstances of the trial, are to be allowed some latitude in this respect.   50 Mo. 126; 53 Mo. App. 405.   And verdicts are not overturned for failure of evidence, unless such is very manifest.   36 Mo. 338; 58 Mo. 546.   In particular was the evidence concerning the flour properly admitted.   144 Mo. 26.

SHERWOOD, J.—Defendant was indicted for receiving and concealing stolen property.   Charging part of indictment the following: "Charge that W. C. Guild, on the ———— day of April, 1898, at and in the county of Dent and State of Missouri, did then and there, two certain dark colored overcoats, one small overcoat, one lady's brown jacket, one lady's blue jacket, silk lined, one lady's black jacket, one sack of roasted coffee, one hundred pounds of flour, all of the said property being of the aggregate value of $55.80, of the goods and chattels of the Dent County Mercantile Company, a corporation, then lately before feloniously stolen, taken and carried away, unlawfully and feloniously did receive and conceal, he, the said W. C. Guild, then and there well knowing the said goods and chattels to have been feloniously stolen, taken and carried away as aforesaid; against the peace and dignity of the State."

Tried, defendant was convicted and awarded five years in the penitentiary.

This prosecution is grounded on section 3553, Revised Statutes 1889.

Before the trial began, the defendant filed a plea in abatement to the further prosecution of the charge contained in the indictment, which plea, omitting caption is the following:

"Defendant states that he is entitled to his discharge from the indictment in this cause for the following reasons:

"Because the State of Missouri, through her attorney who prosecutes the pleas of the State, promised and agreed

State v. Guild.

· to discharge the defendant from said prosecution on the consideration that defendant testify before the grand jury in the case of the State against Sprague which testimony defendant gave.   Because said attorney promised to discharge him from said cause if he would testify on the trial of the cause of the State against Sprague, with which agreement defendant complied and testified."

Defendant offered to prove the truth of his plea but this' was denied him and his plea stricken from the files, on the ground that it presented no defense to the charge; whereupon defendant excepted.

1.   Touching such matters, BLACKSTONE says: "It hath also been usual for the justices of the peace, by whom any persons charged with felony are committed to jail, to admit some one of their accomplices to become a witness (or, as is generally termed, king's evidence) against his fellows; upon an implied confidence, which the judges of jail delivery have usually countenanced and adopted, that, if such accomplice makes a full and complete discovery of that and all other felonies to which he is examined by the magistrate, and afterwards gives his evidence without prevarication or fraud, he shall not himself be prosecuted for that or any other previous offense of the same degree."   4 Blackstone's Com. 330.

BISHOP says:   "As to the nature of the agreement with the accomplice, doubtless ordinarily the mere fact that he testifies for the government, freely and fully acknowledging his own participation in the offense, implies the common equitable understanding, not amounting to an agreement enforcible at law, that a pardon shall follow.   But where the testifying was not with the concurrence of the State's attorney, or arranged for by any other authorized person, or even under the expectation of a pardon, it was held not to have this effect.   The substance of the implied or expressed understanding is, that the accomplice shall honestly and fairly

disclose all he knows, including his own guilt, and even confidential communications to attorneys; thereupon, if his testimony is corrupt, or if otherwise his disclosures are only partial, he gains nothing, and his confessions may be used against him. If he does his part, his claim to consideration will not be impaired should the defendant be acquitted. Since he can not plead his acquired right in bar, if the attorney for the State refuses to recognize it, the court can only continue the cause to permit him to apply to the executive for pardon." [1 Bishop New Crim. Proc., sec. 1164.]

In this State the executive can not pardon, etc., until after conviction (art. V, Const., sec. 8), and consequently it would be useless for the trial court to continue the cause in order for something to occur, which, under our Constitution, could not occur.

This equitable understanding or implied agreement made with an accomplice, is, as is also elsewhere shown, incapable of enforcement, and the accomplice can not plead such agreement, etc., in bar, nor avail himself of it, because it is merely an equitable title to the mercy of the executive. [3 Rice, Evid., p. 505.] This equitable title to pardon in cases of this sort where a party without any agreement to that effect has turned State's evidence, has been recognized from a very early period in English criminal law, and this precedent has been unvaryingly followed by our American courts. An exception to the prevalence of this principle it seems occurred in People v. Faulkner (not reported), where the district attorney moved by the clamor of the multitude refused to *nolle pros* the indictment against the accomplice and he was imprisoned. "Satisfactory evidence of these facts having been brought to the attention of the Attorney-General of the United States, and through him to President Harrison, the latter issued an unconditional pardon to the accomplice 'because I am advised that the United States having used the prisoner against one jointly indicted (his brother)

State v. Guild.

an equitable right to clemency under the decision of the Supreme Court is established. This right, if it can be called such, could not be enforced, but as it has become a settled rule in criminal procedure, I very reluctantly act upon it.' " [Cited in 3 Rice's Evid., pp. 518, 519.]

Under the foregoing authorities, no error occurred in the ruling of the trial court.

2. Defendant was the owner and operator of a picture gallery in Salem, Dent county, Missouri. He also practiced dentistry at the same locality. Prior to the time of the commission of the offense with which he stands charged, he had purchased some $250 of merchandise from C. S. Minor, circuit clerk of Dent county.

The store of the Dent County Mercantile Company was broken open on the night of the thirteenth or early in the morning of the fourteenth of April, 1898, and several hundred dollars worth of goods were removed therefrom. A day or so afterwards these goods were found by the owners and identified in the gallery of Guild hid away. On the evening the goods were found the sheriff and one of the owners of the store went to Guild's house in Salem and told him they wanted to search his gallery. He went with them to it and unlocked the door and when they went upstairs to search he slipped out of the building and attempted to escape, but was caught and brought back and put in jail. When caught by Young, Guild said, "I want to go on; that thing is going to ruin me."

It is asserted by counsel for defendant that there is "no evidence that another stole the property," but this assertion is without support in the record, in which there is abundant evidence that the property was stolen prior to its felonious reception by Guild. And there was no manner of necessity for alleging who was the thief. [Bishop Dir. and Forms, sec. 916; 2 Bishop New Crim. Proc., sec. 982.] And the above

recited facts show that defendant had knowledge of the lar-
ceny. His conduct is inconsistent with any other rational
theory (People v. Connor, 68 Hun. 78); and it has even been
ruled that: Being present where stolen property is con-
cealed, knowing it to be stolen, and keeping silent and refus-
ing to give information to officers searching for the same,
is, when unexplained, conduct sufficient to warrant a convic-
tion, notwithstanding the evidence does not show that the ac-
cused was in the physical possession of the property secreted.
[State v. St. Clair, 17 Ia. 149. To like effect is State v.
Turner, 19 Ia. 144.]

3.    Indeed, the authorities go further than what has
been already stated. BISHOP says: "Possession of the
goods may, as in larceny, and under the like rules and with
the like effect, be evidence against the receiver." [2 New
Crim. Proc., sec. 989.] Elsewhere the learned author ob-
serves that in receiving stolen goods, possession is equally
admissible as in simple larceny. Ib., sec. 747.

In Reg. v. Matthews, 1 Den. C. C. loc. cit. 610, where
the indictment was for receiving stolen goods, COLERIDGE, J.,
observed: "He bought the goods of the thief, and they are
found in his house. *Prima facie,* if stolen goods are found
in a man's house, he, not being the thief, is a receiver." In
some cases the crime of theft so shades into that of receiving
stolen goods that it is difficult to distinguish what is the crime
committed. A case decided in 1864, a case which was deter-
mined after great consideration, a reserved case gives apt il-
lustration to this view; it is Regina v. Langmead, 1 Leigh.
and Cave C. C. 427, where the defendant was indicted both
for stealing, and for receiving, and there it was determined
that: Recent possession of stolen property is evidence,
either that the person in possession stole the property,
or that he received it knowing it to be stolen, according
to the other circumstances of the case. Where the prisoner
was found in the recent possession of some stolen sheep, of

which he could give no satisfactory account, and it might reasonably be inferred from the circumstances that he did not steal them himself, it was held that there was evidence for the jury that he received them knowing them to have been stolen. In that case, POLLOCK, C. B., remarked: "The distinction taken by Mr. Carter between a charge of stealing and one of receiving, with reference to the effect of evidence of recent possession, is not the law of England. If no other person is involved in the transaction forming the subject of the inquiry, and the whole of the case against the prisoner is that he was found in the possession of the stolen property, the evidence would, no doubt, point to a case of stealing rather than a case of receiving but in every case, except, indeed, where the possession is so recent that it is impossible for any one else to have committed the theft, it becomes a mere question for the jury whether the person found in possession of the stolen property stole it himself or received it from some one else. If, as I have said, there is no other evidence, the jury will probably consider with reason that the prisoner stole the property; but, if there is other evidence which is consistent either with his having stolen the property, or with his having received it from some one else, it will be for the jury to say which appears to them to be the more probable solution."

Goldstein v. People, 82 N. Y. 231, was a case where upon the trial of an indictment for receiving stolen goods with knowledge, the court charged "that the possession of stolen goods, immediately after the larceny, if under peculiar and suspicious circumstances, when there is evidence tending to show that some other person or persons stole the property, such possession not being satisfactorily explained would warrant" a conviction. Held, no error. See, also to same point Reg. v. McMahon, 13 Cox C. L. C. 275.

And it is announced in Roscoe's Criminal Evidence, following Regina v. Langmead, *supra,* that: "Recent possession of stolen property, may, according to circumstances,

support either the presumption that the prisoner stole the property or the presumption that he received it knowing it to be stolen." [2 Vol. (8 Ed.), p. 1133.]

Under these authorities there is no trouble in 'finding ample evidence on which to find defendant guilty. Goods are stolen, and within a few hours thereafter, he is in possession of the fruits of the larceny he attempts no explanation, and when he finds that everything, so far as he is concerned, is lost, seeks safety in flight. In this State it has always been the law that recent possession of stolen property is presumptive evidence of guilt, and we discover no reason why the same presumption should not hold as to the recent possession of property received and concealed. Adhering, therefore, to the foregoing authorities, we shall overrule State v. Bulla, 89 Mo. 595, where the point in question was but lightly considered.

4. But it is urged that there was no evidence to show that the property found in defendant's possession and charged to have been received and concealed was equal in value to $30. In reply to this contention it may be said by way of quotation: "The possession of a part of the stolen goods of the smallest value, in connection with other circumstances, might clearly fix the guilt of stealing all of the goods upon defendant." [State v. Barker, 64 Mo. loc. cit. 285.] Under authorities heretofore quoted, the same principle is applicable to the case at bar. Here the sack of coffee branded in two places with the initials of the Dent County Mercantile Company was found along with the other stolen goods in defendant's gallery and possession and concealed, and in the sack were a few grains of roasted coffee such as the sack had been filled with. From that sack had been taken and placed in a bin in the store of that company some thirty to fifty pounds of coffee to deal out to customers, leaving seventy to ninety pounds of coffee in the sack, which at twenty cents per pound, its retail price, would amount to from $16

to $20, and this sum with the other articles mentioned in the indictment and proven to have been stolen and to have been found in defendant's possession, saying nothing about the flour, would have amounted to $30 and upwards. It would be a very unreasonable inference to draw about the coffee, that pains were taken to empty the sack of the coffee in the store and then carry the empty sack and carefully deposit it with defendant. The jury did not draw such a foolish inference, and we will not draw it for them. As to the flour, although it could not be positively identified, yet it was sufficient to go to the jury that the witnesses stated it "looked like the flour" stolen from the company. [State v. Babb, 76 Mo. loc. cit. 505.] Nor in this connection is it to be forgotten that the flour was amongst a lot of goods proven to have been stolen from the company. The jury doubtless drew the only proper and legitimate inference from the place and the surroundings in which the flour was found. Besides, it would seem that to this flour might well be applied the maxim *"noscitur a sociis."* In short, it would seem that *articles* can be known equally as well from the company they keep as *words*. [McNichol v. U. S. Merct. Agency, 74 Mo. loc. cit. 463.]

Finding no error in the record we affirm the judgment. All concur.