(No. 25007.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* AL JOHNSON *et al.* Plaintiffs in Error.

*Opinion filed June 15, 1939—Rehearing denied October 4, 1939.*

Wilson, C.J., and Stone, J., dissenting.

Wm. Scott Stewart, (Thomas F. Donovan, of counsel,) for plaintiffs in error.

John E. Cassidy, Attorney General, Thomas J. Courtney, State's Attorney, and A. B. Dennis, (Edward E. Wilson, John T. Gallagher, Blair L. Varnes, Melvin S. Rembe, and Richard B. Austin, of counsel,) for the People.

Mr. Justice Orr delivered the opinion of the court:

Al Johnson, Max Johnson and Sam Levin were convicted in the criminal court of Cook county of conspiracy to defraud the State of Illinois of certain sums of money claimed to be due under the Motor Fuel Tax act. That conviction was affirmed by the Appellate Court for the First District. On writ of error sued out of this court the conviction was reversed because one of the two counts of the indictment was insufficient to establish a conspiracy. (*People* v. *Johnson,* 363 Ill. 45.) A second conviction was obtained by the People on the good count in the indictment and affirmed by the Appellate Court. (296 Ill. App. 646.) The case again comes to this court on writ of error sued out by Al and Max Johnson.

The overt acts upon which the conspiracy charged is based are alleged to have occurred prior to and on September 15, 1930. The Statute of Limitations for such an offense is eighteen months (Ill. Rev. Stat. 1937, chap. 38, par. 631) and would have run on March 15, 1932, if no steps had been taken to prosecute. However, on October 3, 1930, these defendants were indicted by a grand jury in Cook county. On November 24, 1930, this indictment was stricken off by Judge McGoorty with leave to reinstate. If credit be given the People for fifty-two days, being the time from the filing of the original indictment on October 3, 1930, until it was stricken, November 24, 1930, the eighteen-months' Statute of Limitations period expired on May 5, 1932. However, the same indictment was, in fact, later reinstated by the State's attorney on December 8, 1932, and on January 16, 1933, after a hearing before Judge Prystalski, it was quashed. Two and one-half months later, March 31, 1933, another indictment charging the same offense was returned by the grand jury and resulted in the present conviction. It is the contention of defendants that the Statute of Limitations had run during the time the old indictment reposed off the docket before return of the second indictment and that prosecution is, therefore, barred. This point is not tenable for the reasons stated in our former opinion in *People* v. *Johnson, supra.*

On their first appearance in this court the defendants submitted their case only upon the common law record, which, of course, contained nothing to show why the original indictment had been stricken. After reversal and remandment and a second trial, the case is now here with a bill of exceptions. Upon leave granted, a certain additional record has been filed, including some additional testimony, and a motion by the People to strike was taken with the case. Defendants do not find fault with our decision when the first trial was reviewed by us merely upon the common law record, but ask for a different interpretation when the in-

dictment is studied in the light of evidence contained in the bill of exceptions. That evidence, they contend, shows the People finally and unconditionally settled the motor fuel tax claim against them and definitely abandoned their prosecution. To show that such claim of settlement and abandonment was not made in the Appellate Court the People have filed the brief and abstract used there by defendants. Our examination of that brief and abstract shows allegations of error because the trial judge did not support them in the contention that the statutory period had run against the indictment. The errors were briefed and argued in the Appellate Court, and the argument was there advanced that, when viewed with the evidence, the second indictment of March 31, 1933, constituted a new cause of action barred by the statute. The Appellate Court, on the second and present writ of error where it had the bill of exceptions before it, misconceived the situation when it said: "Defendants' brief discusses the question of the indictment, but this matter has already been settled by the decision of the Supreme Court." It thus referred to our decision wherein we considered the sufficiency of the indictment with only the common law record before us, and without any opportunity to review the evidence.

It is urged that we cannot consider the argument of settlement of claim and abandonment of prosecution because it was not presented in the Appellate Court. The People become confused between a point presented, briefed and argued and a mere argument in support of a point. The point presented in the Appellate Court was that the Statute of Limitations had run against the indictment. Various arguments, based upon the evidence adduced in the second trial, were used to support the point. The additional argument is founded upon material appearing in this amended and supplemental record. After they had given notice of their intention to the People, who offered no opposition, the defendants, in vacation, obtained an order from a judge of

this court allowing them to file an abstract of the amended and supplemental record. At the February, 1939, term of this court, the defendants, after giving due notice of their intention and serving copies of their motion on the People, applied for leave to file an amended and supplemental record of proceedings had prior to the trials. The People also failed to appear and contest this last described motion and it was allowed by us as a matter of course. After thus twice receiving notices and both times failing to appear or object, the People cannot in good grace now complain for the first time that the amended and supplemental records and abstract are improperly before us, and that the motions for leave to file them were improvidently allowed. Under such circumstances, it will be presumed no error was committed in allowing the motions. (Dodd and Edmunds, Ill. App. Proc. sec. 844.) The motion taken with the case to strike the amended and supplemental records and abstract is therefore denied.

The testimony preserved and shown in the amended and supplemental record includes the written motion of the People to strike the original indictment, (No. 58382) as follows:

"To the Honorable J. P. McGoorty, Chief Justice of the Criminal Court of Cook County.

"Now comes the People of the State of Illinois, and moves the Court that the above entitled cause be stricken off with leave to reinstate. As a reason for making this motion the people state that these Defendants were indicted for violation of the Motor Fuel Tax Law. This law went into effect on the 1st of August, A. D. 1929, and it took the Department of Finance, under whose supervision the taxes are collected, some time to be organized, and that from time to time, and from the date that the law went into effect until recently, and the State Department had been unable to exercise the supervision that seemed necessary and required; that these defendants took advantage of this lack

of supervision, and are charged with handling a great quantity of motor fuel oil upon which they failed to pay any tax. That they have acknowledged their indebtedness to the State for the amount of motor fuel on which they have failed to pay a tax, that they have made a substantial payment of such taxes, and made arrangements to pay the balance.

"They also agree and submit to such regulations in the future, that if lived up to there will be no further violation of the law, and this motion is made with the distinct understanding that if any of these defendants fail in the future to in good faith comply with the law and the arrangements that have been made with reference to their future operation that then, and in that event, the State's Attorney shall have a right to come into court immediately and have the above cases reinstated and prosecuted.

"That taking into consideration all of these facts and the interest of the State, and the recovering the State is making of taxes, we believe that justice better served than in further prosecution of these cases at the present time. All of which is respectfully submitted.

(Signed) JOHN A. SWANSON,<br>
*State's Attorney,*<br>
By GEORGE S. LAVIN,<br>
*Assistant State's Attorney.*"

George S. Lavin, the assistant State's attorney who signed the above motion, testified that he was assigned to handle the case against defendants by his superior, John Holman. He said the latter suggested that prosecution be held up because he (Holman) was negotiating for something and would let witness know later. Some time later the witness was called into the office of Holman and told that the People and the defendants had straightened out their affairs and had come to an agreement. He was instructed to appear in court and have the case stricken. At

the suggestion of Judge McGoorty the motion to strike was filed in writing. At that time the defendants, through their attorney, paid in $21,000; this the witness turned over to McArdle, who was the representative of the Director of Finance. No complaint was ever made to the witness, as long as he continued as assistant State's attorney,—*i. e.*, to January 31, 1932. The witness further said that it was the understanding between Holman, representing the State, McArdle, representing Mr. Kinney, who headed the Department of Finance, and the defendants that there would be no further prosecution of the case if defendants performed their part of the agreement. The exact amount due the State was not known at the time and McArdle agreed to give defendants a statement of the total amount due. The agreement, the witness said, provided that if defendants, or any of them, violated any of the laws of Illinois, particularly those with reference to the collection and payment of motor fuel taxes, the case would be reinstated. The gist of the agreement was that defendants must not violate the Motor Fuel Tax law in connection with the payment of taxes.

Thomas McArdle, in substance, testified that he had nothing to do with the actual settlement. He represented Kinney and received the $21,000. He said the defendants, as they agreed, paid $1000 per month on the back taxes and paid all current taxes. The payments were made regularly as long as the witness received them at the Chicago office of the Department of Finance. In May or June, 1931, on orders received, he said the payments henceforth were to be made direct to the Department of Finance in Springfield. In December, 1930, the defendants paid $13,000 in one sum on the back tax account instead of $1000. The payments started in 1930, and continued six or seven months. The order to make future payments in Springfield came directly from Kinney, the Director of Finance. McArdle testified the agreement provided a down payment of $21,000 to be

applied against their tax bill, and that the account was to be further reduced by monthly payments of $1000. In consideration of these payments they were going to allow defendants to continue to operate and pay their current taxes weekly. On the cross-examination McArdle said: "Those payments were made to my office every month as long as I had control of it, which was until May or June, 1931. In May or June, 1931, I instructed Max Johnson, either over the telephone or by letter, that the payments would go direct to Springfield in the future. And from that time Max Johnson was not in default to my knowledge."

Al Johnson, one of the defendants, said the first direct payment was made to the Springfield office of the Department of Finance in June, 1931. When he paid the ensuing July account to Kinney, the latter accepted a $4400 payment ($1400 cash and a check for $3000) and surrender of the distributor's license in full and final satisfaction of the claim of the State against defendants for unpaid motor fuel taxes. In accepting this money Kinney said "that the prosecution would never come up again."

We have quoted enough from the record to show that as long as business conditions permitted, the defendants paid their current taxes and made an honest effort to pay up the back taxes. Not an item of their agreement was breached by them, as their payments were made according to schedule. In fact they even met the demand of Kinney for installment payments of amounts in excess of those called for by the agreement. These transactions were largely in 1931 when a business and money panic became widespread, and caused defendants to give up their license, without which they obviously could not continue to make further payments. They could not cope with depression conditions over which they had no control. This was recognized by the State in the surrender of their license and the acceptance by Kinney of the $4400 as final payment. During the intervening years there has been a change of State and county administra-

tions, with a new corp of officers in the Department of Finance and in the office of the State's attorney of Cook county. The record discloses that the present officials are pressing a charge solely from information found in the files of their respective offices. Lavin and McArdle are the only surviving officials who participated in the settlement and collection of payments thereunder. Their testimony shows an honest compliance by defendants with the terms of the agreement. The conduct of defendants *in futuro* was the subject matter of the agreement, and they are not shown to have violated the Motor Fuel Tax law subsequent thereto.

The People, acting through their duly constituted authorities, reached an agreement with defendants at the time the motion was made to strike the indictment. In pursuance of this agreement, the People accepted $21,000 from defendants in open court, in the following December (according to McArdle) were paid $13,000 in one sum on the back tax account and in subsequent months were paid about $10,000 more. In view of these substantial payments by defendants, the prosecuting officers are in honor bound to carry out the terms of their agreement. If the administrative and prosecuting agencies of the People fail to keep their legitimate agreements, public policy and the great ends of justice require the court to prevent such breaches of faith. *People* v. *Bogolowski,* 317 Ill. 460.

We must regard the circumstances of settlement, the striking of the indictment, the performance of the agreement, the recognition by the State of performance by the acceptance of the final $4400 payment and the surrender of the distributor's license as together conclusively evidencing a full and final settlement of the back motor fuel tax account and the definite abandonment of the prosecution.

The judgment is reversed.      *Judgment reversed.*

WILSON, C.J., and STONE, J., dissenting.